1

2

3

4

5

6

7

FILED & ENTERED

DEC 20 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY hawkinso DEPUTY CLERK

8          UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10                RIVERSIDE DIVISION

11

12  In re:                          Case No.: 6:15-bk-12078 MJ

    ORANGE COUNTY NURSEY, INC.,     CHAPTER 11

13                                  **MEMORANDUM OF DECISION RE**
14                                  **TREATMENT OF MINORITY VOTING**
                                    **TRUST'S CLAIM AND MODIFICATIONS**
15                                  **TO CHAPTER 11 PLAN**

16              Debtor.             Date: Sept. 29, 2016
                                    Time: 1:30 p.m.
17                                  Courtroom: 301

18

19

20      On July 7, 2016, this court entered its Order re Valuation of

21  Minority's Claim, finding that the value of the claim ("Valuation

22  Claim") is $2,419,888.  In accordance with two District Court

23  Appellate Orders, this court recognized that it must treat the

24  Valuation Claim as a claim, not an interest, but that the claim

25  must be subordinated to the same priority as common stock[1].

26

27  _____

28  [1] Order re Bankruptcy Appeal issued by the District Court on October 10, 2010 (attached to Docket # 538-1) and Order
    re Bankruptcy Appeal issued by the District Court on September 24, 2014 (Docket # 806).

1   Therefore, the court invited briefing by the parties on the

2   remaining issues in this chapter 11 case, including how the

3   subordinated claim should be treated in the plan and what

4   modifications, if any, needed to be made to the plan to accomplish

5   that treatment.  Briefs on those issues were filed by the parties

6   on September 6 and 20, 2016; the matter was argued on September

7   29, 2016, and then submitted for this written ruling.  To the

8   extent that findings of fact and conclusions of law are required

9   for this court's ruling, this memorandum shall serve as those

10  findings and conclusions as allowed by Rule 7052.[2]

11

12      The Minority Voting Trust (MVT) argued in its briefs that,

13  although subordinated to the priority of common stock, its claim

14  must be separately classified[3].  Then, to retain the unique

15  "claim" aspect of its position, a value quantified in money as of

16  the petition date, vis-à-vis the other shareholders' interests in

17  common stock, quantified in a percentage of value on the Effective

18  Date[4], it posited that one of two approaches could be taken.  The

19

20

---

[2]  Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3]  MVT states in its reply brief that Judge Mund already made a binding ruling that the claim should be separately classified.  That statement is not true, as that ruling by Judge Mund was in the Supplemental Memorandum of Opinion, entered on November 15, 2012, Docket # 679, which was reversed by the District Court in Docket #806 entered on September 24, 2014.  Since her ruling in the Supplemental Memorandum was reversed, it follows that any findings and conclusion in the memorandum are no longer valid.  This is not the first time MVT has mischaracterized the binding aspects of this case's docket and prior rulings by Judge Mund.  This repeated mischaracterization of the binding aspects of the docket by MVT is troubling and surprising to the court, given this court's prior admonishment of such behavior and the response filed by MVT.

[4]  The Effective Date is defined in Section 1.35 of the 4th Amended Plan to mean "the first Business Day ten (10) days after the Confirmation Order becomes a final order."  The Confirmation Order and the Effective Date described in the plan were stayed by a series of orders from the District Court in March and April 2010, found on the docket at #538-2,

first would be to pay the Valuation Claim in cash before the treatment of other equity interests of Class 7 shareholders ("off the top").  The second would be to reduce the non-MVT shareholders' claims to a liquidated amount (based on the Effective Date value of the corporate debtor), use the amount of the Valuation Claim in cash on the petition date, then redistribute the shares of OCN based on these values.  The result of this recalculation of equity would be that, if OCN has declined in value after the petition date, MVT's percentage interest in OCN will increase and the Majority's and other shareholders' interests will decrease.  As authority for these proposals, MVT cited a bankruptcy court opinion from Minnesota, In re SendmyGift.com, Inc., 280 B.R. 667 (Bankr. D. Minn. 2002), and a law review article, Nicholas L Georgakopoulos, *Strange Subordinations: Correcting Bankruptcy's §510(b)*, 16 Bankr. Dev. J. 91 (1999-2000).

MVT clarified that if the court does not follow the separate classification/pay off the top methodology, then a conversion ratio will need to be established, whereby MVT obtains new shares in respect to the value of the Valuation Claim, resulting in the diminution of equity for others.  For this proposition it cited a Fifth Circuit case, Schaefer v Superior Offshore Int'l, Inc. (In re Superior Offshore Int'l, Inc.), 591 F3d 350 (5th Cir. 2009), which affirmed a plan with a conversion

---

Exhibits E, F and G.   A discussion of the Effective Date and treatment of Class 7 interests as of that date follows later in this memorandum.

mechanism which allowed a claim subordinated under §510(b)
(denominated in dollars) to share in surplus funds with common
equity (denominated in percentage shares), which resulted in a pro
rata sharing in the same priority.[5]

MVT's proposal was not precise as to the equation for the
conversion mechanism, and it only suggested the manner by which
the court would determine the residual value of the shares as of
the Effective Date, which is critical to the ratable distribution.
It submitted that a lengthy valuation proceeding could be avoided
by using current financials (balance sheets) and obtaining a
stipulation of the parties.

As to the separately classified claim for attorneys' fees and
expenses[6], MVT recognized that this court has already ruled that
the fee claim must also be subordinated to the same priority as
common stock[7], meaning it would not be treated in Class 5B as
proposed in the plan, but would be added to the Valuation Claim
for the purposes of the ratable distribution. MVT submitted that
further liquidation of the attorneys' fees claim would not be

_____

[5] The court recognizes that <u>Superior Offshore Int'l</u> is factually dissimilar to this case because the court did not impose the conversion mechanism. It merely affirmed that the plan which treated the subordinated claim in this manner was not inconsistent with the purpose of §510(b).

[6] The 4th Amended Chapter 11 Plan, which was confirmed, has the attorneys' fees claim in Class 5B and the balance of the MVT claim in Class 7.

[7] Memorandum of Decision re Claim of Minority Shareholders For Attorneys' Fees and Expenses, entered on January 12, 2016, as docket # 931.

required[8] because the currently allowed sum of $907,098.13, when added to the Valuation Claim, would be sufficient to give MVT the majority controlling shares in OCN.

MVT also argued that the plan should be modified by the court to provide for the ratable distribution as well as to place the attorneys' fees claim in Class 7 rather the Class 5B.

Not surprisingly, like everything else in this case, OCN, controlled by the Majority, took a contrary view in its briefs. It argued that, as a result of the second District Court ruling that the Valuation Claim is subordinated under §510(b) to the priority of common stock, MVT has only an equity interest in common stock and therefore should be treated like all other shareholders in Class 7.  In the confirmed plan, Class 7 interests may either be retained as equity or, at the choice of the holder, canceled in exchange for their pro rata share of the liquidation value of the debtor as of the Confirmation Date.  Calling the Valuation Claim an "Equity Claim", OCN submitted that as a result of its subordinated status, MVT's claim cannot be paid ahead of the rest of Class 7[9].  Citing a series of cases, OCN argued that a

---

[8]  The sum of $682,509.75 in attorneys' fees was ordered by the court in the Order on Allowance of the Minority Voting Trust's Attorney Fee Claim, entered on August 17, 2012, as docket # 635 and the sum of $224,588.38 in expenses was determined by the court to be payable to MVT  in the Memorandum of Decision re Claim of Minority Shareholders for Attorneys' Fees and Expenses, entered on January 12, 2016,  as docket # 931, for a total sum of $907,098.13 due on the claim as now calculated.

[9] In its opening brief OCN posits that MVT wants to be paid ahead of Classes 5 and 6 which have a higher priority under the plan.  MVT does not claim it should be paid before those classes, so the court will not discuss that concept further.

chapter 11 plan may properly provide that subordinated claims and common stock retain their interest in a reorganized corporation but receive no distribution of money or property and that this outcome applies to the Valuation Claim.  In other words, if the lowest class (here, equity) receives nothing, then a subordinated claim receives nothing; MVT merely retains its equity interest in OCN.  In keeping with these arguments, OCN asserted that the Valuation Claim need not be placed into a separate class since it will be adequately treated in Class 7 and that the plan needs no modification because the plan properly provides for Class 7.  In addition, OCN submitted that the court has no power to modify the plan, since such modification must come from a plan proponent.

This court's task is to treat the Valuation Claim in a manner that is consistent with the two District Court rulings which presently provide the law of the case.  The first ruling firmly holds that MVT has a claim, not an interest, which is distinct from other shareholders:  "From the moment the Superior Court entered the decree, the Minority had an enforceable right to payment for its shares --…..In this way, the Minority did not 'retain all of the indicia of any other shareholder.'"  When OCN did not make the prepetition payment for the shares, "the Minority has a claim for the value of its shares had OCN been dissolved."[10] Notwithstanding that in its second ruling the District Court found

[10] Oct. 12, 2010 Order, page 10.

the claim should be subordinated to the priority of common stock, it still preserved its status as a distinct claim, different from the other shareholders:  "This conclusion does not conflict with the Court's determination that '[t]o the extent the Bankruptcy Court's subsequent orders – including its order adopting OCN's reorganization plan – treat the Minority's interest as equity, these orders will need to be vacated or modified consistent with this Order.' [quoting its first ruling]…..But this conclusion does not affect the Court's prior determination that Minority has a "claim" or right to payment as defined by 11 U.S.C. §101(5)…."[11]

   To make these controlling rulings mesh, MVT argued that whereas the *priority* of the claim is determined by the subordination ruling, the *value* of the claim is addressed by the original claim ruling.  OCN, on the other hand, made no attempt to mesh the two rulings.  From its perspective, the first ruling is irrelevant because once the claim is subordinated to the priority of equity, it totally loses its "claim" status and MVT may only share in the effective date equity measured by its 40.25% shares.

   This court does not agree with OCN's assertion that after two District Court rulings, intervened by an interlocutory appeal to the Ninth Circuit, and followed by a contested valuation hearing which determined the amount of the Valuation Claim *on the petition date*, MVT has only a residual equity interest like all other

---

[11] September 24, 2014 Order, pages 9-10, fn 7.

shareholders.  This conclusion gives no weight to the valuation of

MVT's equity as of the petition date, the "claim" part of its

interest.  MVT is correct when it contends that subordination

determined only priority, but the valuation hearing determined

value; that value must be accounted for when the equity interest

in the debtor is determined on the Effective Date.

    This court does agree with OCN that because MVT shares in

priority with the other shareholders, it cannot be put into a

separate class.  Further, based on the priority scheme of the

Bankruptcy Code, payment for the value of MVT's equity in cash is

forbidden if the other shareholders do not receive cash.  As a

consequence, the only way to give due credit to the petition date

value of the shares, represented by the Valuation Claim, is to

accomplish some type of ratable redistribution of the shares as

posited by MVT.  As apparently recognized by both parties, because

the residual value of OCN is substantially less than the value of

equity on the petition date, the result may well be that MVT is no

longer the Minority and all other shareholders will slip in

percentage.[12]

    The Court recognizes there is no precedential case law which

_____

[12] On more than one occasion the Majority, in the guise of the debtor, has argued that such ratable redistribution of the shares would be unfair to the shareholders not represented by either the Majority or the Minority.  The court has a difficult time understanding why that is MVT's fault.  The Majority has been in control of this chapter 11 proceeding from the day OCN filed to the present date, averting the direct consequences of the state court order but creating the costly proceedings and valuation outcome now before the court.  If the Majority wanted to protect the voiceless shareholders, it could have taken some steps to do so and perhaps should have conducted this litigation differently.  At a minimum, it would not have diminished the residual value of OCN by bleeding the Majority's attorney's fees from its

supports this treatment of the Valuation Claim.  However, the Majority/OCN has cited no binding authority which prevents such redistribution of shares to give weight to the petition date value of MVT's claim.  Therefore, the court finds and concludes that a ratable redistribution formula will provide to MVT what it holds in the Valuation Claim.

Having reached that decision in concept, the court, however, is left with open questions which must be addressed before the court can enter a final order and certify its rulings to the Ninth Circuit.  As the court sees it, the following are the open issues:

1. The formula for the ratable redistribution must be written.  The court believes the formula to be as follows:

A = residual value of equity today

B = Majority share value today = A x 50.25%

C = Others share value today = A x 9.5%

D = Valuation Claim plus awarded attorneys' fees = $3,326,986

E = Total dollar value = B + C + D

Ratably redistributed Majority shares = B ÷ E

Ratably redistributed other shares = C ÷ E

coffers, as the court understands it has done. The Majority, not MVT, had a fiduciary duty to the other shareholders which may have been breached.

Ratably redistributed Minority shares = D ÷ E[13]

The parties are invited to correct the court if its
formula is flawed.

2. A streamlined method for determination of the
residual value at the present time must be
determined.[14] MVT has suggested that the parties could
stipulate to use the value of equity as shown on the
current balance sheets of OCN.  A stipulation is
attractive, to avert another time consuming and
costly valuation hearing just to create an ownership
percentage in an order which will be immediately
appealed to the Ninth Circuit.  The court would
entertain other suggestions on an expedited way to
determine present value.

3. The plan needs to be modified to provide language
consistent with this decision.  The court rejects the
argument of OCN that it lacks the power to do that
modification based on the assertion that a court
cannot be the proponent of a plan.  The District

_____

[13] For illustration purposes only, if the residual value today is $4,000,000, B = $4M x 50.25% = $2,010,000; C = $4M x 9.5% = $380,000; D = $3,326,986; E = $5,716,986.  Ratably redistributed shares for Majority = 35.64%; for others = 6.64%; for Minority = 58.2%.

[14] Logic demands that the time for such valuation of equity should be the Effective Date of the plan.  The Effective Date is defined as the first day after 10 Business Days after the Confirmation Order is final.  Under federal law an order is final after entry, notwithstanding an appeal.  However, the decision in the appeal of the Confirmation Order in this case reversed the treatment of MVT's claim in the plan and compelled further modifications to the plan which are consistent with that decision.  In a sense the order reversed those provisions in the Confirmation Order, so it is not yet final.  Picking the present date as the Effective Date would be consistent with the procedural posture of the case.

1            Court ordered that the plan be modified to be

2            consistent with its ruling, gives in this court the

3            power to make that modification.  The parties need to

4            suggest the exact language needed to modify the plan.

5        4. After these issues are determined, the court must

6            enter a final order and certify the matter for direct

7            appeal to the Ninth Circuit.  The parties may suggest

8            arguments they would like included in that

9            certification.

10

11     Based on the foregoing memorandum and the open issues above,

12 the court requests the parties to file simultaneous statements

13 with the court addressing the open issues 14 days after entry of

14 this Memorandum of Decision.  Depending on the parties'

15 submissions, the court will then either set a hearing or finalize

16 all matters without further hearing.

17

18                        ###

19

20

21

22

23

24

25

26  Date: December 20, 2016

27                       Meredith A. Jury
                       United States Bankruptcy Judge

28