**FILED & ENTERED**

**JUN 16 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY moser    DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>ORANGE COUNTY NURSERY, INC.,<br>a California Corporation<br><br><br>Debtor(s). | Case No.: 6:15-bk-12078 MJ<br><br>CHAPTER 11<br><br>MEMORANDUM OF DECISION IN SUPPORT OF ISSUANCE OF STAY PENDING APPEAL<br><br>[No hearing required] |

INTRODUCTION

The court has filed the Fourth Amended Plan of Reorganization (As Modified) and entered its final orders in this case, including the Order Confirming Fourth Amended Plan of Reorganization (As Modified) and the Order Allowing the Claim of the Minority Voting Trust.  The Debtor, Orange County Nursery (OCN), controlled by the

Majority shareholders, filed its Notice of Appeal of those orders and requested a certification for a direct appeal to the Ninth Circuit. Concurrently with this Memorandum and Order Issuing Stay Pending Appeal, the court is also filing the Certification for Direct Appeal to the Ninth Circuit.

At a hearing on April 4, 2017, regarding the modifications to the Fourth Amended Plan which needed to be made in accordance with the court's Memorandum of Decision re Treatment of the Minority Voting Trust's Claim and Modifications to Chapter 11 Plan, the Debtor raised issues regarding how certain provisions in the plan would be implemented while an appeal of the confirmation order was pending. The court construed Debtor's comments as a premature[1] request for a stay pending appeal. Because the court had already determined that it would issue a stay pending appeal when the anticipated appeals were filed, it notified the parties during the April 4 hearing that it would issue a stay once the Notice of Appeal was filed. Therefore, the Order Imposing Stay Pending Appeal is entered based both on the oral motion of the Debtor and on the court's own violation. This Memorandum sets forth the reasoning behind the issuance of the stay.[2]

---

[1] Premature in the sense that at that time no orders had been entered and no notice of appeal filed.

[2] During a further hearing regarding plan issues on May 4, 2017, the attorneys for MVT inquired again about the court's intention regarding a stay pending appeal. The court confirmed its intention to issue a stay but advised MVT attorneys they could file a written argument against issuance of the stay by May 15, 2017. They did not file any written opposition

## DISCUSSION

The factors to be considered in determining whether to issue a stay pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Nken v Holder, 556 U.S. 418, 434 (2009); See also Indiana State Police Pension Trust v Chrysler LLC, 556 U.S. 960 (2009); McDermott v Ampersand Pub., LLC, 559 F.3d 950,957 (9th Cir. 2010), citing Winter v Natural Res. Def. Council, 555 U.S.7, 20-22 (2008).

> 'A stay is not a matter of right, even if irreparable injury might otherwise result.'  Virginian R. Co., 272 U.S., at 672, 47 S. Ct.222.  It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'  Id., at 672-673, 47 S. Ct. 222; see Hilton, supra, at 777, 107 S. Ct. 2113 ('[T]he traditional stay factors contemplate individualized judgments in each case').  The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.

Nken v Holder, 556 U.S. at 433-34.

The Supreme Court in Nken emphasized that no matter how

overwhelming the findings on one of the four factors, a court must find the party requesting a stay had satisfied, more than minimally, all of the factors. ("[M]ore than a mere 'possibility' of relief is required." Id. at 434-35.) Prior to Nken, the Ninth Circuit had developed a line of cases which held that once irreparable harm was shown, a sliding scale can apply to the other three factors.

> Petitioner must show either a probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in petitioner's favor.  These standards represent the outer extremes of a continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified.

Abbassi v INS, 143 F. 3d 513, 514 (9th Cir. 1998).

Although it acknowledged the holding of Nken, the Ninth Circuit in two later cases held that the balancing test/sliding scale of Abbassi was not abrogated entirely.  In Alliance for the Wild Rockies v Cottrell, 632 F. 3d 1127 (9th Cir. 2011), the court held that although the Supreme Court had raised the bar on what must be shown on the irreparable harm prong to justify a stay, it did not alter a court's authority to balance the elements of the four-prong test, so long as a certain threshold showing is made on

each factor. Id. at 1131-32.  A different panel of the same court in Leiva-Perez v Holder, 940 F. 3d 962 (9th Cir. 2011)confirmed that Abbassi was alive and well and that a serious question going to the merits was sufficient to satisfy the first prong of the test so long as the balance of all factors favored issuance of a stay.  Id. at 966-67.

Keeping in mind that the existence of a serious legal question is sufficient to satisfy the likelihood of success on the merits prong, this court analyzes why a stay in this case pending Debtor's appeal to the Ninth Circuit is appropriate.  After it valued the equity in Debtor on the petition date and from that valuation determined the monetary value of MVT's claim, findings subject to a clearly erroneous standard of review on appeal and unlikely to be overturned, the court then was required to determine how MVT's claim should be treated in the chapter 11 plan.  This second ruling, which is captured in the Fourth Amended Plan of Reorganization (As Modified) and the Order Allowing the Claim of the Minority Voting Trust, required the interpretation of legal principles, a ruling normally subject to de novo review by an appellate court.  Moreover, this court's ultimate ruling on the treatment of the claim was premised on two prior District Court Orders re Bankruptcy Appeal, which had reversed on legal grounds earlier rulings of this court.  As a consequence, there is a high likelihood that the circuit court's review of the bankruptcy

court's rulings will be de novo, a standard of review more likely to result in reversal than clear error.

In addition to the standard the circuit will utilize is the substance of this court's ruling, which was unique and had no pertinent case law precedent to support its determinations. The Ratable Redistribution of the shares of the Debtor on the Effective Date of the Plan certainly raises a "serious legal question" as to its propriety. As the trial court, this court is unable to make a call on the likelihood Debtor will overturn the equitable determination this court has made, done after considerable deliberation and in light of the District Court rulings which controlled its decision. It seems fair to say reversal is more than a remote possibility. But it seems even more clear that the appeal raises serious legal questions, satisfying the first prong.

The second and third factors are logically considered together, particularly in light of the balancing test the court must conduct. This court's ruling would have a substantial, perhaps devastating impact on the Majority and perhaps on Debtor, as it would turn the controlling ownership upside down. Those not in control before, MVT, would control the board as majority and the prior controlling owners would be relegated to second chair. Once that switch is implemented, its effect will be irreparable to the majority. On the flip side, although MVT has waited almost

ten years since it commenced its corporate dissolution action in state court to either gain control of OCN or be paid the 2009 monetary value of its ownership interest, waiting a bit longer will be just that – a wait – without a substantial daily impact on the lives of the beneficiaries of the trust.

Perhaps this balance is better seen in light of what the court could do or undo, depending on the appellate ruling.  If the court did not issue a stay, corporate control would go to MVT, causing unknown changes to the operation of OCN and most certainly having an impact on the daily lives of several individuals.  If the Ninth Circuit then reversed that ruling, causing control to be revested in the Majority, the sudden switch back would have a daily impact on everyone's lives, or at least so it seems.  In essence, unscrambling this egg would be most difficult.  On the other hand, with a stay in place, business would continue as usual until the ruling is affirmed, at which time an orderly transition to new controlling ownership could take place.  These factors overwhelmingly favor issuance of a stay.

The court perceives no public interest in this private party (largely family) dispute and therefore, finds that factor is neutral.

## CONCLUSION

Based on the analysis above, the court will issuance a stay pending appeal.

Date: June 16, 2017

Meredith A. Jury
United States Bankruptcy Judge